# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICA FIRST LEGAL FOUNDATION, | |
| Plaintiff, | Case No. 22-cv-3029 (BAH) |
| v. | |
| U.S. DEPARTMENT OF AGRICULTURE, *et al.*, | |
| Defendants. | |

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants, U.S. Department of Agriculture, U.S. Department of Education, U.S. Department of Energy, U.S. Environmental Protection Agency, U.S. Department of Health and Human Services, U.S. Department of Homeland Security, U.S. Department of the Interior, U.S. Department of Labor, U.S. Small Business Administration,  U.S. Department of State, U.S. Department of Transportation, U.S. Department of the Treasury, U.S. Department of Veterans Affairs, and U.S. Department of Housing and Urban Development, move for summary judgment pursuant to Federal Rule of Civil Procedure 56.  The reasons for this motion are set forth in the attached Memorandum of Points and Authorities in Support of Defendants' Motion for Summary Judgment.  A proposed order and statement of material facts not in dispute are also attached, along with fifteen declarations.

Dated: January 11, 2023

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General
Civil Division

ELIZABETH J. SHAPIRO
Deputy Branch Director

*/s/  Laurel H. Lum*

LAUREL H. LUM
Trial Attorney (NY Bar No. 5729728)
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L St NW
Washington, D.C. 20005
Telephone: (202) 305-8177
Email: laurel.h.lum@usdoj.gov
*Counsel for Defendants*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| AMERICA FIRST LEGAL FOUNDATION, | |
| Plaintiff, | Case No. 22-cv-3029 (BAH) |
| v. | |
| U.S. DEPARTMENT OF AGRICULTURE, *et al.*, | |
| Defendants. | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF**
**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................ 1

BACKGROUND ................................................................................................................. 2

I.   Executive Order 14019 ............................................................................................. 2

II.  Plaintiff's FOIA Requests ........................................................................................ 2

III.   The Instant Litigation ............................................................................................ 3

STANDARD OF REVIEW ................................................................................................ 4

ARGUMENT ..................................................................................................................... 5

I.   Defendants properly withheld their strategic plans pursuant to FOIA Exemption 5 ........... 5

    a.   Defendants properly withheld their strategic plans under FOIA Exemption 5 based on the presidential communications privilege. ............................................................ 6

    b.   Several Defendants properly asserted additional, overlapping withholdings over portions of their strategic plans under Exemption 5 based on the deliberative process privilege. ..................................................................................................... 10

CONCLUSION .................................................................................................................. 15

# TABLE OF AUTHORITIES

**Cases**

*Aguiar v. DEA*,
  865 F.3d 730 (D.C. Cir. 2017) ................................................................. 4

*Brayton v. Off. of the U.S. Trade Representative*,
  641 F.3d 521 (D.C. Cir. 2011) ................................................................ 4

*Buzzfeed, Inc. v. FBI*,
  No. 18-cv-2567, 2020 WL 2219246 (D.D.C. May 7, 2020) ..................... 7

*Campaign Legal Ctr. v. U.S. Dep't of Just.*,
  34 F.4th 14 (D.C. Cir. 2022) .................................................................. 10

*Elec. Priv. Info. Ctr. v. U.S. Dep't of Just.*,
  18 F.4th 712 (D.C. Cir. 2021) .................................................................. 5

*EPA v. Mink*,
  410 U.S. 73 (1973) ................................................................................... 5

*FTC v. Grolier Inc.*,
  462 U.S. 19 (1983) ................................................................................... 6

*In re Sealed Case*,
  121 F.3d 729 (D.C. Cir. 1997) .............................................................. 6, 7

*Jud. Watch, Inc. v. U.S. Dep't of Just.*,
  20 F. 4th 49 (D.C. Cir. 2021) ........................................................... 13, 14

*Judicial Watch, Inc. v. Dep't of Energy*,
  412 F.3d 125 (D.C. Cir. 2005) ................................................................. 5

*Lardner v. DOJ*,
  No. CIV.A.03-0180(JDB), 2005 WL 758267 (D.D.C. Mar. 31, 2005) ...... 5

*Loving v. Dep't of Def.*,
  550 F.3d 32 (D.C. Cir. 2008) ................................................................... 6

*New York Times Co. v. Off. of Mgmt. & Budget*,
  531 F. Supp. 3d 118 (D.D.C. 2021) ......................................................... 7

*NLRB v. Sears, Roebuck & Co.*,
  421 U.S. 132 (1975) ........................................................................... 11, 12

*Renegotiation Bd. v. Grumman Aircraft Eng'g Corp.*,
  421 U.S. 168 (1975) ............................................................................... 13

*Reps. Comm. for Freedom of the Press v. Fed. Bureau of Investigation*,
    3 F. 4th 350 (D.C. Cir. 2021)..................................................................................... 13

*Russell v. Dep't of the Air Force*,
    682 F.2d 1045 (D.C. Cir. 1982) ......................................................................... 11, 14

*Shapiro v. U.S. Dep't of Just.*,
    893 F.3d 796 (D.C. Cir. 2018) .................................................................................. 4

*Stonehill v. I.R.S.*,
    558 F.3d 534 (D.C. Cir. 2009) .................................................................................. 5

*U.S. Fish & Wildlife Serv. v. Sierra Club, Inc.*,
    141 S. Ct. 777 (2021)........................................................................................... 10, 13

*United States v. Nixon*,
    418 U.S. 683 (1974) .................................................................................................. 6

*United States v. Weber Aircraft Corp.*,
    465 U.S. 792 (1984) .................................................................................................. 5

*Vaughn v. Rosen*,
    523 F.2d 1136 (D.C. Cir. 1975) ......................................................................... 10, 13

*Wash. Post Co. v. Special Inspector Gen. for Afg. Reconstruction*,
    No. 18-2622 (ABJ), 2021 WL 4502106 (D.D.C. Sept. 30, 2021)............................ 9

**Statutes**

5 U.S.C. § 552(a)(8)(A)(i) ............................................................................................ 6

5 U.S.C. § 552(b)(5) ...................................................................................................... 5

Pub. L. No. 114-185, 130 Stat. 538 (2016)................................................................... 6

**Rules**

Fed. R. Civ. P. 56(a) ...................................................................................................... 4

**Regulations**

Exec. Order No. 14,019, *Promoting Access to Voting*,
    86 Fed. Reg. 13,623 (Mar. 7, 2021) ..................................................................... 2, 7

## INTRODUCTION

In this case arising under the Freedom of Information Act ("FOIA"), Plaintiff, the America First Legal Foundation, challenges whether the records responsive to its request are exempt from disclosure pursuant to FOIA Exemption 5. The Defendant agencies[1] each conducted an adequate search and properly withheld the sole responsive document—that agency's strategic plan submitted to the White House in response to Executive Order 14019—in full under Exemption 5 based on the presidential communications privilege. The agencies asserted Exemption 5 based on the presidential communications privilege because each of the sole responsive documents was submitted to the White House and used by an immediate advisor of the President in formulating advice to be given to the President. Each of the strategic plans therefore falls squarely within the presidential communications privilege, and their disclosure would cause foreseeable harm by chilling the full and frank disclosure of policy ideas from agencies to the White House, causing public confusion about White House and agency policy regarding voting rights issues, and undermining the quality of presidential decisionmaking. Certain of the Defendants also properly asserted additional, overlapping withholdings of portions of their submitted strategic plans under Exemption 5 based on the deliberative process privilege. These Defendants asserted the additional withholdings based on the deliberative process privilege over information that reflects proposed actions that have not been implemented, have been decided against, or have not been implemented as proposed. These portions of the submitted strategic plans therefore are both pre-decisional and

---

[1] The named Defendants are: U.S. Department of Agriculture ("USDA"), U.S. Department of Education ("ED"), U.S. Department of Energy ("DOE"), U.S. Environmental Protection Agency ("EPA"), U.S. Department of Health and Human Services ("HHS"), U.S. Department of Homeland Security ("DHS"), U.S. Department of the Interior ("DOI"), U.S. Department of Labor ("DOL"), U.S. Small Business Administration ("SBA"), U.S. Department of State ("DOS"), U.S. Department of Transportation ("DOT"), U.S. Department of the Treasury ("Treasury"), U.S. Department of Veterans Affairs ("VA"), and U.S. Department of Housing and Urban Development ("HUD") (collectively "Defendants").

deliberative, and their disclosure would diminish the willingness of agency officials to describe proposed actions in communications with the White House, cause public confusion on what proposed actions reflect actual agency policy, and diminish the quality of agency decision-making, particularly in the context of voting rights issues. Because the Exemption 5 withholdings are justified, Defendants have satisfied their obligations under the FOIA, and the Court should grant summary judgment to Defendants.

## BACKGROUND

### I.    Executive Order 14019

On March 7, 2021, President Biden issued Executive Order 14019, Exec. Order No. 14,019, *Promoting Access to Voting*, 86 Fed. Reg. 13,623 (Mar. 7, 2021) ("EO 14019"). The Order tasks federal agencies with "consider[ing] ways to expand citizens' opportunities to register to vote and to obtain information about, and participate in, the electoral process." *Id.* at 13,623. This effort included "evaluat[ing] ways in which the agency can, as appropriate and consistent with applicable law, promote voter registration and voter participation." *Id.* The Order included several specific categories of ideas to promote voter registration and participation that federal agencies should consider. *See id.* at 13,623-13,624. The Order also required federal agencies to submit a strategic plan to the White House within 200 days outlining "ways . . . the agency can promote voter registration and voter participation" based on the consideration of options required by the Order. *Id.* at 13,624. Agencies were to submit these strategic plans to the Assistant to the President for Domestic Policy, *id.*, who was at the time and remains currently Ambassador Susan E. Rice.

### II.    Plaintiff's FOIA Requests

On June 10, 2022, Plaintiff submitted a FOIA request to each Defendant, requesting production of each agency's strategic plan submitted to the White House pursuant to EO 14019. *See* Compl. ¶ 12, ECF No. 1 ("Compl."); *America First Legal Foundation v. U.S. Department of*

*the Treasury*, No. 22-cv-3034-BAH, Compl. ¶ 10, ECF No. 1 (D.D.C. Oct. 6, 2022) ("*Treasury Compl.*").

Defendants Treasury, VA, and HUD responded to Plaintiff's FOIA request by indicating that they had located the responsive document and were withholding it in full under FOIA Exemption 5. *See America First Legal Foundation v. U.S. Department of the Treasury*, No. 22-cv-3034-BAH, Answer ¶¶ 22-23, 26, 28-29, 34-35, ECF No. 11; *see also Treasury* Compl. ¶¶ 22-23, 26, 28-29, 34-35.

Defendant SBA initially informed Plaintiff, on June 24, 2022, that it possessed no records responsive to Plaintiff's FOIA request. *See* Compl. ¶ 74; Answer ¶ 74. Plaintiff administratively appealed, and SBA corrected its response on December 20, 2022, informing Plaintiff through a letter that the agency had the responsive document and was withholding it under FOIA Exemption 5. Ex. A, Decl. of Eric S. Benderson ¶¶ 11-12.

As of October 6, 2022, Defendants USDA, ED, DOE, EPA, HHS, DHS, DOI, DOL, DOS, and DOT had not provided a final, substantive response to Plaintiff's FOIA request. *See* Answer ¶¶ 34, 40, 45, 51, 57, 60, 66, 72, 83, 88, ECF No. 6.

### III.    The Instant Litigation

Plaintiff brought suit on October 6, 2022, challenging the agencies' responses or lack thereof to Plaintiff's FOIA requests. Compl. ¶¶ 12-13; *Treasury* Compl. ¶¶ 10-11, 13. Plaintiff initially brought two separate suits—the instant suit against the Defendants who had either not responded to Plaintiff's FOIA request or had indicated that they had not located the responsive document, and a second suit against the Defendants who had responded by withholding the responsive document. After Defendants filed their answers, counsel for the Defendants informed counsel for Plaintiff that each Defendant had located the responsive record and was withholding it in full under FOIA Exemption 5. Joint Mot. to Consolidate Cases at 2, ECF No. 19. On the basis

of this information, the Parties jointly moved for consolidation of the cases, *id.* at 1-2, which this Court granted, Minute Order, Nov. 29, 2022.

Plaintiff has conveyed to Defendants that it intends to challenge the assertion of Exemption 5 over the strategic plans of each defendant agency. It has also conveyed that it does not challenge the adequacy of the searches performed, nor the withholdings under Exemption 6 that DOS made on clearance pages attached to the responsive document. Accordingly, Defendants do not address their searches for the strategic plans of each Defendant nor DOS's withholdings under Exemption 6. As the agency declarations and the Declaration of Richard A. Sauber explain, the strategic plans were appropriately withheld pursuant to Exemption 5.

## STANDARD OF REVIEW

Most FOIA cases are resolved on summary judgment. *See Brayton v. Off. of the U.S. Trade Representative*, 641 F.3d 521, 527 (D.C. Cir. 2011). Under Federal Rule of Civil Procedure 56, a court should grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In a FOIA case, a court may base its grant of summary judgment "on the basis of agency affidavits if they contain reasonable specificity of detail rather than merely conclusory statements, and if they are not called into question by contradictory evidence in the record or by evidence of agency bad faith." *Aguiar v. DEA*, 865 F.3d 730, 734-35 (D.C. Cir. 2017) (citation omitted); *see Shapiro v. U.S. Dep't of Just.*, 893 F.3d 796, 799 (D.C. Cir. 2018) ("Typically, the agency demonstrates the applicability of a FOIA exemption by providing affidavits regarding the claimed exemptions."). "[A]n agency is entitled to summary judgment if no material facts are in dispute and if it demonstrates that each document that falls within the class requested either has been produced or is wholly exempt from FOIA's inspection requirements." *Elec. Priv. Info. Ctr. v. U.S. Dep't of Just.*, 18 F.4th 712, 717 (D.C. Cir. 2021) (cleaned up).

**ARGUMENT**

**I.    Defendants properly withheld their strategic plans pursuant to FOIA Exemption 5.**

FOIA Exemption 5 protects "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency."[2] 5 U.S.C. § 552(b)(5).  In other words, Exemption 5 incorporates civil litigation privileges. Unlike in civil litigation, however, in the FOIA context there is no official invocation of a privilege.  *See, e.g.*, *Lardner v. DOJ*, No. CIV.A.03-0180(JDB), 2005 WL 758267, at *8 (D.D.C. Mar. 31, 2005) (unlike in the discovery context, in FOIA cases "[a]n agency does not invoke a privilege against discovery when it withholds a document under one of the [statutory] exemptions").  Rather, the defendant agency "simply makes the determination that a statutory provision protects the [responsive] documents from disclosure, and withholds the documents on that ground."  *Id.*  For this reason, in the FOIA context, a court must determine only whether the information at issue would "routinely" be disclosed in civil litigation.  *United States v. Weber Aircraft Corp.*, 465 U.S. 792, 799 (1984) (citation omitted); *Stonehill v. I.R.S.*, 558 F.3d 534, 539 (D.C. Cir. 2009) ("FOIA Exemption 5 . . . incorporates the privileges the government *typically enjoys* in pretrial discovery" (emphasis added)).  For privileges that would in civil litigation require a balancing, such as documents for which a party would have to make a showing of need, no balancing or showing of need is undertaken.  *See FTC v. Grolier Inc.*, 462 U.S. 19, 28 (1983). Instead, an agency need only make a threshold showing that information would ordinarily be

---

[2]  Although the White House is not an agency for purposes of FOIA, "the Supreme Court [has] deemed it 'beyond question' that documents prepared by agency officials to advise the President were within the coverage of Exemption 5 because they were 'intra-agency or inter-agency memoranda or letters that were used in the decisionmaking processes of the Executive Branch.'" *Judicial Watch, Inc. v. Dep't of Energy*, 412 F.3d 125, 129 (D.C. Cir. 2005) (quoting *EPA v. Mink*, 410 U.S. 73, 85 (1973)).  Because all of the challenged withholdings in this case stem from materials generated by each agency defendant and exchanged between each agency defendant and the White House, all the challenged withholdings satisfy this threshold requirement.

protected by one or more privileges, which include the deliberative process privilege and the presidential communications privilege, *see Loving v. Dep't of Def.*, 550 F.3d 32, 37 (D.C. Cir. 2008), to properly withhold it under Exemption 5. Defendants have made such a showing.

In addition to showing that a withholding meets an applicable FOIA exemption, Defendants must show that they "reasonably foresee[] that disclosure [of the strategic plans] would harm an interest protected by an exemption" or that "disclosure is prohibited by law." Pub. L. No. 114-185, 130 Stat. 538, 539 (2016) (codified at 5 U.S.C. § 552(a)(8)(A)(i)).

### a. Defendants properly withheld their strategic plans under FOIA Exemption 5 based on the presidential communications privilege.

Defendants appropriately withheld in full pursuant to FOIA Exemption 5's presidential communications privilege prong their strategic plans that they submitted to the White House in response to EO 14019. The presidential communications privilege "preserves the President's ability to obtain candid and informed opinions from his advisors and to make decisions confidentially." *Loving*, 550 F.3d at 37 (citations omitted); *see also United States v. Nixon*, 418 U.S. 683, 706, 708 (1974) (the "President and those who assist him must be free to explore alternatives in the process of shaping policies and making decisions and to do so in a way many would be unwilling to express except privately"). The privilege extends to "documents solicited and received by the President or his immediate White House advisers with broad and significant responsibility for investigating and formulating the advice to be given the President." *Loving*, 550 F.3d at 37 (internal quotation marks, brackets, and ellipses omitted); *see In re Sealed Case*, 121 F.3d 729, 745 (D.C. Cir. 1997) (indicating that the privilege applies to communications "solicited and received by those members of an immediate White House adviser's staff who have broad and significant responsibility for investigating and formulating the advice to be given the President on the particular matter to which the communications relate"). The privilege "applies to

documents in their *entirety*," thus no segregability analysis is required. *In re Sealed Case*, 121 F.3d at 745 (emphasis added).

Defendants properly withheld their strategic plans under Exemption 5 based on the presidential communications privilege because the plans were each "solicited and received by [an immediate White House adviser and] those members of an immediate White House adviser's staff who have broad and significant responsibility for investigating and formulating the advice to be given the President" regarding voting rights issues. *In re Sealed Case*, 121 F.3d at 745; *see* Ex. B, Decl. of Richard A. Sauber ¶¶ 3, 7, 12. The President solicited the strategic plans in EO 14019. 86 Fed. Reg. at 13,624. He directed that the plans be submitted to one of his immediate White House advisors, the Assistant to the President for Domestic Policy, who was at the time and remains Ambassador Susan E. Rice, who is also head of the Domestic Policy Council (DPC) within the White House. *See id.* DPC and the Assistant to the President for Domestic Policy, in turn, formulated advice to the President based on those plans. Ex. B ¶¶ 7, 12.

DPC has used the agency's strategic plans submitted pursuant to EO 14019 to formulate advice to be given to the President on voting rights issues. *Id.* ¶ 12. DPC's staff "compiled information from the agency strategic plans for Ambassador Rice's use in White House policy formulation and in briefing the President." *Id.* In addition, "senior White House advisors relied on the strategic plans in formulating advice to the President and creating briefing materials for him." *Id.* The advice that the President's immediate advisors provided to him on the basis of the strategic plans "informed the President on the extent of agency actions and proposals on relevant voting matters and on areas where further Executive Branch action might be needed or considered within the scope of the President's executive authority." *Id.* The White House also engaged in "further discussions with the Defendant agencies regarding the content of their plans and to discuss the agencies' potential plans for implementation, and some of these discussions remain ongoing."

*Id.* ¶ 11.  Thus, the strategic plans were developed, submitted, and used for the purpose of "inform[ing] future policy developments on voting access and to assist DPC in formulating advice to give to the President in this area." *Id.*

The individuals providing advice to the President based on the strategic plans solicited through EO 14019 qualify as "immediate White House adviser[s] . . . who have broad and significant responsibility for investigating and formulating the advice to be given the President on the particular matter to which the [withheld] communications relate." *In re Sealed Case*, 121 F.3d at 752; *see also, e.g.*, *New York Times Co. v. Off. of Mgmt. & Budget*, 531 F. Supp. 3d 118, 129 (D.D.C. 2021) (holding the presidential communications privilege applied to agency emails to "a member of the staff of an immediate advisor to the President, [who] . . . had broad and significant responsibility for investigating and formulating the advice to be given the President on the particular matter to which the communications relate[d]"); *Buzzfeed, Inc. v. FBI*, No. 18-cv-2567, 2020 WL 2219246, at *8 (D.D.C. May 7, 2020) (upholding the application of the presidential communications privilege to the entirety of the FBI's background investigation file of a Supreme Court nominee because the file was solicited and received by immediate White House advisors responsible for advising on the nomination).  DPC, the head of DPC, and other related senior White House advisors have broad and significant authority for exploring and formulating advice to give to the President on domestic policy matters and, in particular, on voting rights matters related to EO 14019.  Ex. B ¶ 7.

For all of the foregoing reasons, the strategic plans fall squarely within the scope of the presidential communications privilege, and Defendants properly withheld them in full on that basis.

Disclosure of the strategic plans would cause specific foreseeable harm.  The President's duties necessitate that he be "able to receive confidential advice of all kinds, from a variety of

sources," including federal agencies.  *Id.* ¶ 13.  Disclosure of the strategic plans would undermine the confidentiality of the process by which agencies provide advice to the President and his senior advisors on potential policy ideas because it "would reveal the information sought and obtained by the White House in the context of presidential decisionmaking."  *Id.* ¶ 15.  Such a disclosure would impair "the ability of the President and senior presidential advisors to obtain frank, unfettered information and advice from Defendants and other Executive Branch agencies on important policy issues such as voting access" in the future.  *Id.* ¶ 14.  If the strategic plans were disclosed, federal agency employees would have to "evaluate advice and information" they were providing to the President and his advisors in the future "through the lens of potential public release," which would impair their ability to "focus solely on providing comprehensive and candid information to the White House."  *Id.*  This chilling effect would prevent the President's DPC advisors from "obtaining the comprehensive information they need from agencies in order to inform policy recommendations to the President and to drive formulation and implementation of the President's policy agenda on voting rights and access issues*."  Id.* ¶ 15; *see Wash. Post Co. v. Special Inspector Gen. for Afg. Reconstruction*, No. 18-2622 (ABJ), 2021 WL 4502106, at *23 (D.D.C. Sept. 30, 2021) (finding the foreseeable harm standard was satisfied for the presidential communications privilege where the declarant explained that disclosure would "burden[] the ability of the President and his advisors to engage in a confidential and frank decision-making process and chill[] or inhibit[] their ability to have candid discussions, thus impacting the efficiency of government policy-making").  Thus, disclosure of the strategic plans would "undermine the quality of presidential decisionmaking."  *Id.*

Disclosure of the strategic plans would also cause "public confusion about whether information considered by the President and his senior advisors actually reflects the President's voting access policies and positions."  *Id.* ¶ 16.  This public confusion is particularly likely because

"many of Defendants' strategic plans contain goals and contemplated future actions that may be taken pursuant to the Executive Order" but that the agencies have not yet decided upon. *Id.* If the strategic plans were released, the public might inaccurately construe these proposed ideas as future commitments, past actions, or provisions already in place at the Defendant agencies. *Id.* The strong potential for public confusion and the resulting chilling effect that such confusion would have on future agency proposals shared with the President and presidential advisors demonstrate the foreseeable harm that would result from release of the strategic plans. *See id.*

For all of the above reasons, Defendants properly withheld their strategic plans in their entirety under Exemption 5 based on the presidential communications privilege. *See* Ex. A ¶¶ 13, 15; Ex. B ¶ 12; Ex. C, Decl. of Alexis R. Graves ¶¶ 8, 16; Ex. D, Decl. of Catherine McConnell ¶ 11; Ex. E, Decl. of Rosemary Law ¶ 12; Ex. F, Decl. of Leah Fairman ¶ 10; Ex. G, Decl. of Katherine Swain-Smith ¶¶ 10-11; Ex. H, Decl. of Vincent White ¶ 9; Ex. I, Decl. of Ryan Law ¶¶ 6, 11; Ex. J, Decl. of Lyndon B. Johnson ¶¶ 15, 17; Ex. K, Decl. of Benjamin B. Klubes ¶¶ 16, 19; Ex. L, Decl. of Susan C. Weetman ¶ 18; Ex. M, Decl. of Alesia Y. Williams ¶ 20; Ex. N, Decl. of Susan Beard ¶¶ 11, 13; Ex. O, Decl. of Victoria Arroyo ¶ 15.

> **b. Several Defendants properly asserted additional, overlapping withholdings over portions of their strategic plans under Exemption 5 based on the deliberative process privilege.**

FOIA Exemption 5 also incorporates the deliberative process privilege, which "protects documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *Campaign Legal Ctr. v. U.S. Dep't of Just.*, 34 F.4th 14, 19 (D.C. Cir. 2022) (citation omitted). To qualify for protection under this privilege, material must be both pre-decisional and deliberative. *See id.* at 23. A document is predecisional "if [it] w[as] generated before the agency's final decision on the matter." *U.S. Fish & Wildlife Serv. v. Sierra Club, Inc.*, 141 S. Ct. 777, 786 (2021). A document

is deliberative "if [it] w[as] prepared to help the agency formulate its position." *Id.*  Put another way, a document is deliberative if it is "a direct part of the deliberative process in that it makes recommendations or expresses opinions on legal or policy matters." *Vaughn v. Rosen*, 523 F.2d 1136, 1144 (D.C. Cir. 1975).

The deliberative process privilege is designed to protect (1) "creative debate and candid consideration of alternatives within an agency, . . . thereby[] improv[ing] the quality of agency policy decisions;" (2) "the public from the confusion that would result from premature exposure to discussions occurring before the policies affecting it had actually been settled upon," and (3) "the integrity of the decision-making process itself." *Russell v. Dep't of the Air Force*, 682 F.2d 1045, 1048 (D.C. Cir. 1982).  As the Supreme Court has recognized, courts "should be wary of interfering with th[e] process" by which agencies "examin[e] their policies." *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 151 n.18 (1975).

As discussed above, Defendants each properly withheld in full their strategic plans, which were solicited by and sent to the White House, under Exemption 5 based on the presidential communications privilege.  In addition to their withholding of their strategic plans in full under Exemption 5 based on the presidential communications privilege, Defendants USDA, ED, DHS, DOI, DOL, SBA, DOT, Treasury, VA, and HUD appropriately assert an additional basis for withholding portions of their strategic plans under Exemption 5 based on the deliberative process privilege.[3]  *See* Ex. A ¶¶ 13, 17-25; Ex. C ¶¶ 8, 18-21; Ex. D ¶¶ 12-15; Ex. E ¶¶ 15-19; Ex. F ¶¶ 12-19; Ex. G ¶¶ 12-21; Ex. H ¶¶ 11-13; Ex. I ¶¶ 6, 13-21; Ex. J ¶¶ 15, 18-20; Ex. K ¶¶ 16, 20-26.  Each of these agencies has asserted an additional deliberative process rationale for withholding the portions of their strategic plans that represent proposed actions that have not been

---

[3] The remaining Defendants, DOS, HHS, DOE, and EPA, invoke Exemption 5 only with respect to the presidential communications privilege.  *See* Ex. L ¶ 18; Ex. M ¶ 20; Ex. N ¶¶ 11, 13; Ex. O ¶ 15.

implemented as proposed and, in some cases, have been decided against.  For example, "[n]one of the proposed actions in [SBA's Strategic Plan] have been decided upon." Ex. A ¶ 17.  For USDA's Strategic Plan, "none of the actions proposed [in the Plan] have been implemented in the exact manner proposed in the Strategic Plan, and the majority of the proposed actions have not been implemented whatsoever, much less in modified form."  Ex. C ¶ 18.  The Department of Education proposed eleven potential actions in its Strategic Plan, but only ever moved forward with two of those potential actions and has not decided to implement any of the other nine.   Ex. D ¶ 13. DHS's Strategic Plan includes "several proposed actions that the Department had not decided upon at the time it submitted the Plan," and DHS "has since implemented only a portion of those proposed actions."   Ex. E ¶ 16.   DOI's Strategic Plan includes "proposed actions [and] details which DOI has never acted upon, is still debating, or has decided against."  Ex. F ¶ 14.   Portions of DOL's Strategic Plan contain "ideas that DOL provided for consideration that would require White House implementation or implementation by other Federal agencies that, to date, have not been implemented" as well as advice from DOL's attorneys "regarding legal principles that DOL agencies should consider when implementing ideas that could increase access to voting."  Ex. G ¶¶ 14-15.  Like the Department of Education, DOT proposed eleven potential actions in its Strategic Plan but has only implemented two of those actions.  Ex. H ¶ 12.  Treasury's Strategic Plan outlined proposed actions in six categories, and it has not implemented the proposed actions in one of those six categories.  Ex. I ¶ 15.  The majority of VA's Strategic Plan consists of "potential ideas that had not yet been decided upon at the time the Plan was submitted to the White House and still have not been decided upon or implemented."  Ex. J ¶ 20.  Finally, all of the proposed actions in HUD's Strategic Plan required "further deliberation and decision-making before a definitive action could be taken" and "[n]one of the proposals were incorporated or adopted as a final decision or policy."  Ex. K ¶ 20.  Instead, to the extent that HUD subsequently acted on

variations of ideas presented in its Strategic Plan, "those final actions were attenuated from the Strategic Plan proposals by significant further decision[-]making." *Id.*

The above-described portions of the strategic plans from USDA, ED, DHS, DOI, DOL, SBA, DOT, Treasury, VA, and HUD, are predecisional because they were "prepared in order to assist . . . agency decisionmaker[s] in arriving at [their] decision[s]" regarding implementation of EO 14019. *Renegotiation Bd. v. Grumman Aircraft Eng'g Corp.*, 421 U.S. 168, 184 (1975). As explained above, all of the portions of the strategic plans which the agencies are withholding under Exemption 5 based on deliberative process privilege preceded final decisions by each agency on whether to take the actions proposed and, indeed, none of the relevant proposed actions has come to fruition. The relevant portions of the above strategic plans are deliberative because they were "prepared to help the agency formulate its position" on what actions to undertake with respect to voting access. *U.S. Fish & Wildlife Serv.*, 141 S. Ct. at 786. The relevant portions of the plans also "make[] recommendations" and "express[] opinions on legal or policy matters," which are trademarks of the types of material that the D.C. Circuit considers "a direct part of the [agency's] deliberative process." *Vaughn*, 523 F.2d at 1144.

The proposed actions discussed in the strategic plans, over which USDA, ED, DHS, DOI, DOL, SBA, DOT, Treasury, VA, and HUD have asserted Exemption 5 based on the deliberative process privilege were developed by agency officials with decisionmaking authority at their respective agencies. *See Jud. Watch, Inc. v. U.S. Dep't of Just.*, 20 F. 4th 49, 55 (D.C. Cir. 2021) (indicating that an agency asserting Exemption 5 based on the deliberative process privilege should "explain . . . the nature of the decisionmaking authority vested in the officer or person issuing the disputed document" as well as "the relative positions in the agency's chain of command occupied by the document's author and recipient") (internal quotation marks and citation omitted); *see also Reps. Comm. for Freedom of the Press v. Fed. Bureau of Investigation*, 3 F. 4th 350, 368 (D.C. Cir.

2021) (holding that "the decisionmaking authority of the persons at issue [wa]s evident from the record" based on the position titles of the individuals involved in the withheld communications). Here, the agency officials involved in the development of the plans had the authority to propose potential actions on voting rights issues and to ultimately decide whether those actions should be implemented in the manner proposed. *See* Ex. A ¶ 19; Ex. C ¶¶ 11-12; Ex. D ¶ 7; Ex. E ¶ 15; Ex. F ¶ 8; Ex. G ¶ 5; Ex. H ¶ 5; Ex. I ¶ 14; Ex. J ¶ 18; Ex. K ¶ 13.  Moreover, the agency officials were providing the proposed actions to the White House pursuant to EO 14019 to inform advice to be given to the President to inform presidential decisionmaking.  Thus, the agencies have made the proper showings to support their assertions of Exemption 5 based on the deliberative process privilege.  *See Jud. Watch*, 20 F. 4th at 55.

Disclosure of the deliberative portions of the above strategic plans, as described above, would cause foreseeable harm.  The potential for public confusion is high because disclosure of those portions of the strategic plans would reveal proposed actions that the agencies have never implemented and, in some cases, have outright rejected.  If the public was provided these ideas, there is a strong chance that there would be confusion about what each agency's policy actually is with respect to voting access issues.  *See* Ex. A ¶¶ 22, 25; Ex. C ¶ 21; Ex. D ¶ 15; Ex. E ¶ 18; Ex. F ¶¶ 17, 19; Ex. G ¶ 18; Ex. H ¶ 13; Ex. I ¶¶ 17, 19; Ex. J ¶ 22; Ex. K ¶¶ 22, 24.  Thus, disclosure of these portions of the strategic plans would undermine a key goal of the deliberative process privilege.  *See Russell*, 682 F.2d at 1048.

Disclosure of the deliberative portions of the above strategic plans would also cause a significant chilling effect on agency employees' willingness to be candid about potential policy ideas in correspondence with the White House in the future, thus undermining "the integrity of the decision-making process itself," both at DOJ and within the White House. *Id.*; *see* Ex. A ¶¶ 22-24; Ex. C ¶ 20; Ex. D ¶ 15; Ex. E ¶ 17; Ex. F ¶¶ 17-18; Ex. G ¶¶ 19-21; Ex. H ¶ 13; Ex. I ¶¶ 17-18, 20;

Ex. J ¶ 21; Ex. K ¶¶ 22-23.  The chilling effect would be particularly strong in the context of voting access issues, which are especially controversial.  *See, e.g.*, Ex. A ¶¶ 23-24; Ex. D ¶ 15; Ex. E ¶ 17; Ex. F ¶ 18; Ex. G ¶¶ 19, 21; Ex. H ¶ 13; Ex. I ¶¶ 18, 20; Ex. J ¶ 21; Ex. K ¶ 23.

Defendants USDA, ED, DHS, DOI, DOL, SBA, DOT, Treasury, VA, and HUD therefore properly withheld portions of their strategic plans under the deliberative process privilege prong of FOIA Exemption 5.

## CONCLUSION

For the foregoing reasons, this Court should uphold Defendants' assertion of Exemption 5 over their strategic plans and grant Defendants' motion for summary judgment.

Dated: January 11, 2023

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General
Civil Division

ELIZABETH J. SHAPIRO
Deputy Branch Director

*/s/   Laurel H. Lum*
LAUREL H. LUM
Trial Attorney (NY Bar No. 5729728)
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L St NW
Washington, D.C. 20005
Telephone: (202) 305-8177
Email: laurel.h.lum@usdoj.gov
*Counsel for Defendants*