# EXHIBIT E

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICA FIRST LEGAL FOUNDATION, <br><br> Plaintiff, <br><br> v. <br><br> U.S. DEPARTMENT OF AGRICULTURE, *et al.*, <br><br> Defendants. | Civil Action No. 1:22-cv-3029 |

## DECLARATION OF ROSEMARY LAW

1. I, Rosemary Law, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

2. I am the Freedom of Information Act ("FOIA") Officer in the Office for Civil Rights and Civil Liberties ("CRCL"), an office within the United States Department of Homeland Security ("DHS" or the "Department"). I have held this position since July 2020.

3. In my capacity as the FOIA Officer, I am responsible for processing all FOIA and Privacy Act ("PA") requests submitted to CRCL. The processing of requests includes determining whether the request complies with applicable procedural regulations, coordinating searches for responsive documents, reviewing responsive documents for applicable exemptions, and preparing correspondence and responses to requesters. My duties require knowledge of DHS FOIA/PA regulations and CRCL procedures, as well as knowledge of CRCL institutional practices, the roles of the various functions within CRCL, and the types of records maintained in each function. My responsibilities include

processing records for FOIA/PA requests that are the subject of litigation, as well as coordinating with other agencies on their and CRCL's equities.

4. In addition to my FOIA/PA responsibilities, I also support discovery efforts for all other litigation involving CRCL, Congressional requests, Government Accountability Office requests, CRCL's Transparency Initiative to proactively post records; as well as a wide variety of other administrative responsibilities.

5. Prior to my employment with CRCL, I served as: the FOIA Officer for the Financial Crimes Enforcement Network, Department of Treasury, from October 2017 through July 2020; a Senior Government Information Specialist (Litigation Team Lead) for the Transportation Security Administration, Department of Homeland Security, from November 2014 through October 2017; a Senior Government Information Specialist (Litigation Analyst) for the Office of Information and Policy, Department of State, from April 2011 through November 2014; a FOIA Analyst for the U. S. Geological Survey, Department of Interior, from December 2009 through April 2011; and a FOIA Analyst for the Federal Motor Carrier Safety Administration, Department of Transportation, from August 2009 through December 2009.  In all of these positions, my primary duties involved handling multiple facets of the FOIA/PA request process.  My responsibilities included managing the electronic FOIA/PA tracking system, reviewing and analyzing FOIA/PA requests, redacting FOIA/PA responses, obtaining, examining, and evaluating records for case resolution and making recommendations, coordinating and overseeing legal and factual research in support of the Office of Chief Counsel, making recommendations to attorney advisors for the best approach on FOIA/PA litigation matters, and writing legal correspondence.

6. During my fourteen years of Federal FOIA/PA experience, I have received extensive FOIA/PA training through the Department of Justice, the American Society of Access Professionals, and the Office of the Director of National Intelligence, as well as agency-specific training with each position I held.

7. I make this declaration in my official capacity based on my personal knowledge, my review of records kept by CRCL in the ordinary course of business, and information provided to me by other CRCL employees in the course of my official duties.

8. On or about March 7, 2021, President Biden issued Executive Order 14019—Promoting Access to Voting.  The Executive Order required federal agencies to draft and submit to the Assistant to the President for Domestic Policy strategic plans on how each agency could promote access to voting.  Consistent with the Executive Order, DHS's Office for Civil Rights and Civil Liberties drafted a Strategic Plan to promote access to voting. DHS's Strategic Plan consists of five pages, proposing various actions that DHS could take to promote access to voting.  The Plan remains a draft and has not yet been finalized in that many of the actions proposed in the Plan have never been decided upon or implemented.  DHS submitted the Plan to the White House in September 2021.

9. On June 10, 2022, DHS's Privacy Office received a FOIA request seeking the Strategic Plan from American First Legal (AFL).  AFL requested DHS to provide "[t]he Department's "strategic plan," that was required by Section 3(b) of Executive Order 14019 (March 7, 2021) on "Promoting Access to Voting," to be sub-mitted to the Assistant to the President for Domestic Policy by September 23, 2021." *See* Ltr. from AFL to DHS dated June 10, 2022.  DHS sent an acknowledgment letter to AFL on July 1, 2022.  Additionally, AFL requested a fee waiver.  DHS made a conditional grant of the

fee waiver and indicated that it queried the appropriate component(s) of DHS for responsive records and would notify AFL if any responsive records were located. Prior to sending subsequent correspondence to AFL, the present lawsuit was filed.

10. DHS located its draft Strategic Plan and has withheld it in full pursuant to FOIA Exemption 5, based on the presidential communications privilege and in part pursuant to FOIA Exemption 5, based on the deliberative process privilege.

11. In order to withhold records or information from release pursuant to Exemption 5 of the FOIA, they must be inter- or intra-agency records. Here, all information withheld from Plaintiff pursuant to this exemption consists of communications and documents generated by, exchanged within, and wholly internal to DHS, or exchanged between DHS and the White House. As such, all information withheld pursuant to Exemption 5 is either "intra-agency" or "inter-agency" and satisfies the threshold of the exemption.

## Exemption 5, Presidential Communications Privilege

12. DHS is withholding its Strategic Plan in full pursuant to the presidential communications privilege prong of Exemption 5 based on the rationale articulated in the declaration of Richard A. Sauber.

## Exemption 5 – Deliberative Process Privilege

13. The deliberative process privilege protects pre-decisional, deliberative records or portions thereof that are part of a process by which agency decisions are made. It protects opinions, advice, evaluations, deliberations, plans, or recommendations that form part of an agency decision-making process, as well as the selection and sorting of factual information relied upon as part of the decision-making process.

14. To show that the deliberative process privilege prong of Exemption 5 applies, agencies must show that the withheld record was (1) part of the process in which the agency engaged in an effort to reach a final decision (i.e., deliberative) and (2) sent prior to a final agency decision, regardless of whether that decision was ever reached (i.e., pre-decisional).

15. The DHS personnel responsible for the development of the plan were members of a multi-component Voting Access Working Group created under the leadership of the DHS Equity Task Force. Additionally, there were senior DHS HQ officials with the review of the plan and include the CRCL Officer, the CRCL Chief of Staff, and the Senior Counselor to the Secretary.  Their decision-making authority is provided in 6 U.S.C. §§ 345(a)(3) and (4) (Section 345), as well as DHS Delegation 19003.  This authority provides that CRCL has the overarching responsibility to direct, oversee, and coordinate the protection of the civil rights and civil liberties of members of the public in their interaction with DHS, including the development of policies to protect civil rights and civil liberties.

16. The Department's Strategic Plan included several proposed actions that the Department had not decided upon at the time it submitted the Plan.  DHS has since implemented only a portion of those proposed actions, but has not implemented all of them.  The Department is withholding under Exemption 5's deliberative process prong the proposed actions that it has not implemented because those proposed actions are pre-decisional and deliberative and do not reflect final agency decisions.  Each of the proposed actions that DHS has not implemented, by their nature, preceded any agency decision and are deliberative in nature.

17. The Department further determined that disclosure of the information withheld under Exemption 5 based on the deliberative-process privilege would inhibit the frank and candid exchange of ideas and recommendations within the Department. Department employees would be less willing to freely share proposals with colleagues and the White House if they were concerned that those pre-decisional, deliberative proposals would be subject to public disclosure. This chilling effect is particularly relevant in the context of topics of significant public controversy such as voting access.

18. The disclosure of the never-acted-upon proposals in the Strategic Plan would also lead to public confusion about what the Department's policy is concerning voting access issues by causing the public to believe that the merely proposed actions represented the actual, final policy of the Department.

19. For these reasons, the proposed actions in the Strategic Plan that have not been implemented are exempt from disclosure under Exemption 5 based on the deliberative process privilege.

20. Because the presidential communications privilege prong of Exemption 5 justifies withholding DHS's Strategic Plan in its entirety, there are no reasonably segregable, non-exempt portions within the Strategic Plan that can be released, and segregability analysis is not required.

21. Under penalty of perjury, pursuant to 28 U.S.C. § 1746, I declare the foregoing is true and correct to the best of my knowledge and belief.

_____
Rosemary Law